Shapiro *v.* Philadelphia Electric Company, Appellant.

Argued April 22, 1941. Before MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Michael A. Foley,* with him *John P. Connelly,* for appellant.

*Morris M. Wexler,* of *Wexler & Weisman,* with him *Robert C. Duffy,* for appellee.

OPINION BY MR. JUSTICE PARKER, June 30, 1941:

In this action of trespass the jury was discharged after the foreman announced that they were unanimously agreed that the defendant had been negligent but were unable to come to any agreement as to the contributory negligence of plaintiff's decedent. Defendant, having previously asked for binding instructions, moved for judgment in its favor on the whole record pursuant to the provisions of the Act of April 20, 1911, P. L. 70, § 1 (12 PS § 684). After argument the court in banc dismissed the defendant's motion and defendant has appealed.

In view of the fact that judgment can be entered on the whole record only if binding instructions should have been given, we will, as we are required to do, refer to the evidence in the light most advantageous

to plaintiff, resolving all conflicts therein in her favor and giving her the benefit of every fact and inference of fact pertaining to the issues involved which may be reasonably deduced from the evidence: *Guilinger v. P. R. R. Co.*, 304 Pa. 140, 144, 155 A. 293.

On August 16, 1938, plaintiff's decedent, Shapiro, and his helper, one Katz, were sent by their employer to make repairs to the roof of premises at 7425 Spruce Street in Upper Darby. Spruce Street runs approximately east and west and slopes in the latter direction. The building in question is one of a row of two story houses so constructed on the sloping street that the roofs of each pair of houses form steps with a drop of two feet between each pair of houses. The dwellings are serviced with electricity by what is known as a "three-wire bus service" consisting of three wires about 3⅝ inches apart attached to the roof with brackets so that the wires are about 8½ inches from the rear wall. The wires are above the roof at the east end of 7425 Spruce Street, but they slope down so that at the western end the top wire is only about one-half inch above the roof. Near the west end of this property there is a conduit containing wires which supply the house with electricity. These wires are connected to the service wires by clamps and about three inches of the wire leading into this connection was uninsulated at this particular building.

Shapiro and Katz arrived at the premises about 11 a. m. on a bright sunny day and placed a ladder against the western end of the rear wall of the building. Shapiro started up the ladder while Katz went to the truck which they had parked in the driveway at the rear to get materials. Suddenly Katz heard Shapiro scream loudly and looking back immediately saw what he described on direct examination as follows: "He [Shapiro] had his left hand on the metal edge [of the roof] and his right hand on the wire—his right forearm—and he got away from the wire and grabbed the lad-

der, and in a split second or so he fell down just like a dead man." The fall caused fatal injuries. No burns were found upon his hand or body by the physician who attended him.

The defendant on this appeal does not contend that there was no evidence from which the jury could have found it negligent. There was testimony that the wire had been bare from at least the early spring of 1938 until the day the decedent met his death and it was in a place where it was reasonably expectable that persons in discharge of their duties might accidentally come in contact with it. A company supplying electricity, which is well known to be a dangerous agent, is bound not only to know the extent of the danger but to use the very highest degree of care practicable to avoid injury to everyone who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them: *Fitzgerald v. Edison Electric Co.*, 200 Pa. 540, 543, 50 A. 161. It has frequently been held that the failure to insulate wires so placed is negligence: *Mullen v. Wilkes-Barre G. & E. Co.*, 229 Pa. 54, 77 A. 1108.

The defendant, while not seriously questioning these principles, insists that the plaintiff's proofs failed to establish that defendant's negligence was the proximate cause of the injury to plaintiff's decedent and insists that Shapiro was guilty of contributory negligence. We are all of the opinion that the proofs presented a case for the jury. We deem it particularly clear that it was for the fact finding body to determine the question of proximate cause. Decedent was seen to be standing on the ladder with his waist line about six inches below the level of the roof. While no burns were found on his body it was testified that one may receive an electric shock without being burned and that the natural reaction to even a slight shock is an involuntary withdrawal. Such in fact is common experience. The top of the ladder was about one foot below

the roof and the top rung was three or four inches from the top of the ladder. Only a "split second" elapsed between the outcry, when Shapiro was seen to have his hand in contact with the bare wire, and the fall. Standing as he was, we think a reasonable mind could well conclude that a shock from an electric current which was then shown to be passing through the wires caused him to fall. Under such circumstances it cannot be ruled by us as a matter of law that the bare wires were not a proximate cause of the injury suffered.

Defendant also insists that Shapiro was guilty of contributory negligence (1) in the selection of a short ladder to reach the roof, (2) in placing the ladder at the point where he did, and (3) in placing his hand on a bare wire.

The roof was twenty-seven feet above a level cement pavement at the rear of the building and a thirty foot ladder was used, while the employer of the decedent had at his shop a thirty-two foot ladder which might have been taken along. These were extension ladders and there was some dispute in the proofs as to whether an overlap of three feet or two feet was proper to be used in their operation. The fact remains that the ladder as used extended within one foot of the roof and that a thirty-two foot ladder would have reached approximately two feet higher. If the longer ladder had been used it would have reached approximately one foot above the roof and its top would have been above and behind the lower service wire.

While Shapiro had been on the roofs of the buildings in this block, which buildings were constructed as a unit, he may have ascended at a different point on this or another house where the height of the roof may have been less. He may not have been able to accurately estimate the height until he erected the ladder and he may have gone to the top of the ladder for the purpose of seeing how he could best reach the roof. What we

do not know is what he intended to do next, whether he intended to go over or under the wires. He did not survive so that he was not present at the trial to explain his conduct. Taking those facts into account and considering that the evidence was for the most part oral, that there were important facts in dispute and that there were inferences of fact to be drawn from the evidence, we are not justified in declaring as a matter of law that decedent was guilty of contributory negligence in choosing this ladder and making the use of it which he did.

*Hoke v. Edison L. & P. Co.*, 284 Pa. 112, 130 A. 309, relied upon by defendant, involved quite different facts from those present here. There a cornice extended fourteen inches beyond the wall against which a ladder was placed. He had another ladder near by that would have reached the cornice. In going to the top of the building he attempted to lean back and place his tools over and around the projection onto the roof. He fell back and in desperation clutched a live wire. Following *Elliott v. Allegheny Co. L. Co.*, 204 Pa. 568, 54 A. 278, we held that the fall from the ladder and not the shock from the wire was the proximate cause of the accident. Here, the jury might conclude from the proven facts that the sequence of events leading to the fatal injury was started by the shock.

Defendant also argues that the ladder should have been placed at the eastern side of the rear of the building where there was a wider space between the edge of the roof and the service wires and that Shapiro should not have placed his hand or arm on the bare wires. The arguments in support of each of these propositions are predicated on the assumption that Shapiro knew or should have known the wire was bare at the point indicated. The state of the evidence will not permit us to say as a matter of law that such was the case. Although decedent had worked on the roofs of other houses in the same row there is no evidence

that he had occasion previously to observe the insulation of the wire at that point or that there was any uninsulated wire at any other point. It is true that one standing on the ground could see the insulation was lacking here but it was only three inches of wire that was exposed and in each instance where a witness testified that he could see the bare wire from the ground he knew of the accident and was looking particularly for such defect. When decedent got to the top of the ladder the sun was shining directly in his eyes and there was no special reason why he should have anticipated negligence on the part of the defendant: cf. *Ridgeway v. Sayre Elec. Co.*, 258 Pa. 400, 409, 102 A. 123. As to the duty of Shapiro to place the ladder in the eastern location we might add that it would appear to be debatable whether it was safer to approach the roof by going under the wire rather than over it. If he was going over the wire it would seem that the location chosen was the more convenient.

When the facts are admitted or are so clearly and conclusively proved as to admit of no reasonable doubt it is the duty of the court to declare the law applicable to them *(Philpott v. P. R. R. Co.*, 175 Pa. 570, 575, 34 A. 856), but where, as here, material facts are in dispute or inferences of fact are to be drawn from the testimony, it is the exclusive province of the jury to determine what they are. We have considered with care the able argument of counsel for the defendant but are all agreed that the contributory negligence of the plaintiff is not shown by such clear evidence that we should declare it so as a matter of law. A court should not usurp the function of the jury to determine questions of fact.

The order of the court below is affirmed.